We'll hear argument next in J. v. Globalfoundries 18861. I think it is a factual determination, because the one case we have to go off of in terms of availability is the Robinson case by the Court of Appeals. In the Robinson case, they found that where a plaintiff didn't seek out to see if equipment was being used or not, and just for no good reason decided to use a six-foot ladder instead of an eight-foot ladder, even though he was told to use the right equipment, that it was available, and he just decided not to use it. In this case, readily available, he has to be able to use it within the time period by which he's asked to do this task. And he knows for a fact that there are only two lulls on this massive construction project, according to the record. One's being used way on the other side of the building, and it's being engaged, and he has no authority. So in Robinson, he also testified that on prior occasions, he had waited for a ladder to be freed up by other workers. So there was a time element. Yes. And that didn't really seem to make a difference. And it says, as a matter of law, these were the sole proximate causes of his injuries. As a matter of law, the court found that he was the sole proximate cause of his injuries, yes. So why isn't that the same issue here? Because in Robinson, there was no proof on the record, and the court actually mentioned this, that he was under a time constraint, and that he could have just waited, or he could have moved on to another project. There's no evidence of that on the record in this case, judge. I mean, the record of evidence we have in front of us is, our guy's being, he's in such a rush, he doesn't even finish unloading his own truck. He's in such a rush, and that he needs, he's been told three different times by a supervisor, get this thing off, get this truck off the property. Thank you. We'll hear from Mr. Rossborough. Good morning, may I please the court, Robert Rossborough, on behalf of Apelli Global Foundries, U.S. Incorporated. To start with the proximate cause issue, before your honors, the emergency situation that Mr. J claims caused him to use this manual lifting maneuver was one of his own making. His supervisor initially told him that he needed to get the worker off of the site by 3 p.m., so that the worker could get back to get off the clock for the, that's in the record, I believe, at A148. The worker, the tougher driver himself, also told Mr. J, and that's in his deposition, Mr. J's deposition testimony, that this was just time for him to get off the clock, and Mr. J in his affidavit in support of cross motion for summary judgment says, if I'd waited for a lull, I would've been able to get him back there by 3.30. So you're looking at a 30 minute deferential, where Mr. J made a purposeful decision to not use an available safety device. And the Court of Appeals in Gallagher against New York Post actually has talked about what readily available means. It says liability under section 240 doesn't attach when the safety devices that plaintiff alleges were absent were readily available at the work site, albeit not in the immediate vicinity. And that's exactly this case. Mr. J admitted there were two lulls on site, one of which had just unloaded the tougher truck that he was driving to pick up these HVAC ducts. In that case, Mr. J could've waited 20 minutes, 25 minutes, still gotten the tougher driver, back to the work site within a reasonable time after the deadline, no consequences would've occurred to Mr. J, his supervisor certainly didn't lay any out, and the only consequence would've been a little bit of overtime by the contractor. That trade off is certainly one that the New York legislature has said needs to be made to promote worker safety. These safety devices are supposed to be on the worker site so that they are available. Yeah, so they can be available for these kinds of lifting techniques. Mr. J made the decision not to pursue that. But even if we accept that an emergency situation existed then that forced him to use this manual lifting maneuver, there was no reason Mr. J needed to get into the back of the truck separately from using the lifting maneuver in the first place. That subsequent decision after the first HVAC duct had been loaded to get into the pathway where the duct was going to be loaded and place himself in harm's way was the sole proximate cause of his injuries and destroys any proximate cause in this case. What option was there? I mean, if he was gonna not use the lull, they were trying to get this thing onto the truck and they needed someone to be on the truck, no? I don't believe so. There's no testimony to that effect in the record that- Well, he got the first one in without anybody in the truck. Right, he got the first one in without anybody in the truck. And his concern, Mr. J testified, was that the second one might dent the first because it was a little bit shorter. But it was going back to, his testimony was, it was going back to the shop to be modified anyway. So again, the trade-off is where you can do this work and if there's a dent in a piece of metal, it's better than having a substantial injury to a worker. There are two proximate cause rationale. Right, two proximate cause issues, I think, in this case. The district court held on the gravity-related elevation harm. And I think that is supported in New York case law as well. There's multiple decisions of the appellate division that- Do you think that there's some ambiguity about this? Certainly, there's ambiguity in every labor law 240 case. I mean, I'm not as nearly versed in New York law as my brother here. Judge Wesley is rightly resident to see another 240 case in front of him. The light of reason does not escape. Absolutely. Every one of these cases has particular facts and the law has not been applied clearly in every instance. But what it essentially has broken down to, from my reading of the law, at least, is where you have, as here, workers who are intentionally propelling an object or an object is launched by its own volition and then falls as a result of the kinetic energy. That's the energy that it generates because it was put into motion. The courts have held that that is not, that is a mere incidental effect of gravity that isn't enough under the Court of Appeals case law to bring an injury under section 240. There may be a different statute that applies. There may be ordinary negligence claim that applies, but it is not a special harm that 240 was supposed to protect against. Well, in any event, this kinetic energy theory seems a little bit far-field to me and the analysis to the rail that, because of some tension within the rail, when the rail's, piece of the rail is loose, then springs up and hits the worker, that just, I just, it seemed, that seems most inappropriate to me. But let me ask you this. Presume that these HVAC ducts had been 10 feet up in the air where they were ready to be installed and they found that they didn't fit and the workers decided to drop them into the back of the truck. Would that have been an elevated relation differential? Sure, because at that point, you have an object that the first application of force to it is gravity, pulls it down, falls into the back of the truck. When you have that force, that's the direct application of the force of gravity in that instance. In this case, you have workers. The thing just tipped over. Gravity would be what caused it to fall. So if in the course of hoisting it, it tipped over and landed on somebody's foot, that would be gravity that caused it, right? In that case, sure, but it's in the incident, what the Court of Appeals case law is looking for is the direct application of gravity. It's gravity is the primary force that caused this. In this instance, that's not the case. In this instance, it was initially propelled by the workers intentionally to defeat gravity, to get it back into the back of the truck. In this example, it was the workers who used kinetic energy to get it off of the scaffold where it was into a truck. It seems to me that that's not gonna work as the standard. The use of kinetic energy is gonna, there's always gonna be energy used to move something from one place to another, and once it's moved, gravity is gonna make it tip over or fall. Right, well, the Court of Appeals has basically said is you look at the application of the force involved primarily, and the primary force that started the motion here was not gravity. It was the workers picking it up and flipping it into the back of the truck. In the application of Judge Wesley's hypothetical, you have the workers just dropping it, and then gravity is the primary force that acts it. Those are two cases, and that's what the cases that the plaintiff relies on differentiates from what district court held below. The Gutierrez case, the Villanueva case, and the Gutman case that were cited in his reply brief all were an object was dropped, whether it was being lifted by an inadequate safety device like the rail hooks in Gutman, or if it was just dropped by workers lifting it up to the nine foot elevated surface in Gutierrez. Each of those times, the force that acted on the object primarily was gravity because it was dropped and it fell. In this case, you have an intentional propulsion of an object to get it into the back of the truck when the plaintiff could have used a different decision had he waited. All right, but so if they were just carrying this giant duct from here to here, required a couple of men to do it, and they dropped it two feet, and it crushed somebody's foot, that's gravity, and according to you, that's covered. Well, that would be the force of gravity, but then you have the additional element, which is a physically, the falling because of a physically different elevation, and that's what's lacking in that example. And that, if they're carrying it on the ground, and the object was on the ground, then the court did it. And put it down. Well, the item is you've got a lifting operation. I mean, this is, these things, you just beat them around constantly. I always had a hard time trying to pin these things down, both at the AD and at the Court of Appeals. I mean, you do have an elevated, you have an elevation differential from where the duct is to where the duct's going to be. So you have an elevation differential. If you reversed it, and they were taking it off the truck, and putting it onto the ground, clearly, if it had fallen off the truck and injured somebody, that would be a classic 240 case, wouldn't it? It would, right. So then the question is, is it different because it's being lifted up onto the truck? Is the risk inherent because of an elevated, a differentiation of elevation at the workplace? And that, does that make this, is this materially different because it's coming from the ground up to the worker as opposed to coming from above the worker down to where the worker is? You say that's different. It is different. The Court of Appeals in Topher, which was a pre-Runner case, which the Court of Appeals distinguished in Runner, said when the item is flying upwards or horizontally at- Runner's a doozer. It certainly is. Yeah, I wasn't there, so I can't. When the Court of Appeals held in Topher that when an object was flying horizontally or upwards at a worker, that's not a 240 injury. And the Court of Appeals in Runner, when the court held that it was a 240 injury, specifically distinguished Runner on that ground, saying, here you don't have the operation of gravity because the item is flying horizontally at the worker or sideways, or upwards. Do you think that the easier course, given some of the ambiguities and some of the issues about New York law, is proximate cause? It is, it is, absolutely. It's far more clear in this instance where you have a worker who should have made two different decisions and unfortunately did not. Steve, my time is up. I would respect- And we should make that decision here based on the record. Yeah, absolutely. Don't send it back and let the judge decide. Absolutely. So your view is that, well, this is an issue of proximate cause that can be resolved as a matter of law. Right, and the district court below, it can be resolved as a matter of law and it should be here, if you need to get that far. I would respectfully request that you affirm the district court order. Thank you. Mr. Manley. Thank you, your honors. Very quickly, I'm just gonna go back to proximate cause. There's no evidence on this record that my client wouldn't have suffered consequences for not getting this truck off the site in the time period in which he was being asked to do it. There's no evidence on this record to say that he could have waited or that he didn't need to get this truck off. The fact is, is that my client is under an extreme amount of time pressure and the only two laws that are available that are on the site are not available to him. What about Gallagher? I'm sorry? What about Gallagher? Gallagher. Gallagher. Judge, it wasn't established in Gallagher that the plaintiff in that case knew where the safety devices were or knew that he was supposed to use them. My guy knows where they are, but he knows that he can't use them. He knows that they are being used. The entire thrust of this statute. Go ahead, I'm sorry. I was gonna say, this was argued below. The judge didn't rule on this, but this was part of the motion, right? Proximate cause? Proximate cause was, it was kind of glossed over just because there was this kinetic energy and gravity issue. No, no, I know what the opinion was, but there was motion for summary judgment. There's a record that's developed and that's one of the arguments presented for dismiss, for granting summary judgment, right? That lack of proximate cause. Yes, Judge. And so the record is set. I mean, if, whether the district court did or not, we could, I guess, just look at the record and say no fact finder could conclude that this injury was proximately caused by the lack of the lull. And if that were the case, there'd be no point in sending it back, right? You could make that real quick. You think there's an issue of fact as to whether he was compelled to not use the lull, right? Yeah, I think the issue of fact is. That's the point you're trying to drive at. Yeah, the issue. But there's, there are two sets of issues. One is the timing and then the second is he gets up there. He doesn't have to get up there. And it's to avoid a dent on another object. But the entire thrust of this law is to protect workers. That's correct, Judge. Yeah, so I mean, him getting up into the truck, I would argue is, that's contributory. He got up into the truck due to the lack of an available safety device. And he got up there to basically regulate the descent of this heavy piece of metal that would have been the job of a lull or a forklift had it been there and had it been available. He testified that if there was a lull available and he could use it, he would have used it for this task. This wasn't a case where he was told to use it or there was one sitting nearby and he was just like, you know what, screw it, I'm not gonna use this thing. We're just gonna put this thing on the truck. It's not that case. Thank you very much. Thank you, gentlemen. Take your journey home, gentlemen. Trip down memory lane. Thank you. Thank you very much. Thank you, gentlemen. I think.